# The Glidden Company v. Wyoming Aviation & Sales Co., etc., et al.

*Robert J. Doran*, for plaintiff.

*W. A. Valentine, Jr.*, for Roland Klisch, defendant.

PINOLA, J., September 25, 1950.—We have before us the motion for new trial of Roland Klisch, one of the defendants, in a suit brought by plaintiff to re-

362

cover from defendants the sum of $184.13 for merchandise sold and delivered. The reasons assigned are: (1) that the verdict was against the law, and (2) that the verdict was against the weight of the evidence; (3) that the verdict was against the law, and (4) that the verdict was against the charge of the court.

Defendant's only contention and his entire argument are based on the alleged error of the trial judge in excluding testimony offered on the part of Roland Klisch, one of the defendants, that he was not a partner, that he had no voice or control in the management of the business, and that he did not share in its profits. All this in the face of the fact that Mr. Klisch admitted that he signed the fictitious name certificate which is copied in fictitious name docket no. 5, at page 473. It shows that J. C. Tracy, Albert Stack and Roland Klisch of 2001 Wyoming Avenue, Forty Fort, are "all the persons owning or interested" in the business designated "Wyoming Aviation & Sales Co.," and to be conducted at "2001 Wyo. Ave., Forty Fort, Pa." This certificate further shows that:

"The name of the agent, if any, through which said business is to be carried on or conducted in the Commonwealth of Pennsylvania, with his address is: Roland Klisch, 2001 Wyo. Ave., Forty Fort, Pa." It was sworn to by the three signers on February 3, 1947.

On the margin of the record appears the endorsement:

"Now 19 April 1948 by paper filed Roland Klisch does hereby withdraw from the above fictitious name. Henry E. Dietrick Prothy Per L. Kutz."

The certificate of withdrawal like the certificate of fictitious name, was filed in pursuance of the Act of May 24, 1945, P. L. 967.

Section 1 of this Act (54 PS §28.1) provides that "no individual or individuals shall hereafter carry on

or conduct any business in this Commonwealth under any assumed or fictitious name, style or designation" unless such person or persons file in the office of the Secretary of the Commonwealth and the Prothonotary an application under oath and *"signed by such person or persons"*, setting forth the names and addresses of *"all the persons owning or interested in said business."*

Under section 7 (54 PS §28.7), any person who has filed such an application may upon his withdrawal from such business file a statement of withdrawal in the office of the Secretary of the Commonwealth and the prothonotary and shall have the right to require the prothonotary "to make a notation on the margin of the book in which such application was entered to the effect that he (is) no longer connected with or interested in such business, if he . . . (has) withdrawn from the business."

## Discussion

The merchandise which was the subject of this suit was sold and delivered on various dates from September 5, 1947, to and including October 20th of the same year. The cost of all shipments amounted to $244.30. Defendants made partial payments on October 16, November 4, November 18, December 3, 1947, and February 18, 1948, totaling $60.17, leaving a balance due of $184.13.

In a letter dated November 20, 1947, defendants, by J. C. Tracy, wrote to the credit manager of plaintiff at Reading that:

"We had intended remitting the last old invoice (dated September 5, 1947) for $153.00 last week, but were unable to do so due to a substantial engine job which was necessary on our large truck. Accordingly, we have had to delay this for a few days, and expect to send the check along this week-end."

Under date of February 6th, in another letter, defendants admitted that there was due to plaintiff the sum of $190.13. They wrote, inter alia:

"At the time we talked with Mr. Muir regarding payment of this account two weeks ago we had intended to have the check in your hands by January 27, but on the Monday following our telephone conversation our truck underwent a $200.00 garage operation and we were forced to hold the check back.

"Our business is now commencing to pick up quite a bit and we expect that we will be able to clean the account up in full by next week, and possibly by the end of this one."

So there is no question but that the verdict returned by the jury is for a sum which is justly due and owing to plaintiff.

Whether the court erred in excluding the testimony of Roland Klisch depends on the purpose of the filing of the certificate of fictitious name and the effect of such filing.

In Ulick v. Vibration Specialty Co., 348 Pa. 241, 243, the court declared:

"The registration being on record was constructive notice to appellant of the nature of the person or business with whom it was negotiating and with whom it contracted: Houser v. Childs, 129 Pa. Superior Ct. 565, 568; Estate of Edwin R. Mack, 111 Pa. Superior Ct. 20, 23. Appellant cannot plead ignorance of facts of which it is deemed to have had notice."

Concerning a similar act (1917, P. L. 645) Justice Sadler said, in Lamb v. Condon, 276 Pa. 544, 547:

"The purpose of this statute was to protect those who might deal with such parties. This thought is well expressed by Judge Henderson, in Engle v. Insurance Co., 75 Pa. Superior Ct. 390, when he says: 'The purpose of the statute is obvious. It was intended to pro-

tect persons giving credit in reliance on the assumed or fictitious name, and to definitely establish the identity of the individuals owning the business, for the information of those who might have dealings with the concern. It was not intended to produce a confiscation of property, nor to relieve debtors from their honest obligations. . . .' "

To permit defendant to contradict his sworn averments in the certificate filed and corroborated by his certificate of withdrawal would be to nullify a statute whose purpose is admittedly wholesome and desirable.

Counsel urge that our Supreme Court has, in fact, permitted such repudiation in Fletcher American National Bank v. Wells, 282 Pa. 164. However, a careful reading of that case reveals that the certificate which had been filed in Massachusetts was signed by only one of the three alleged partners, and that Pierpont, who was sought to be held liable (p. 168), "was not shown to have had any connection with or knowledge of . . . the certificate."

The certificate filed serves the purpose of identifying those against whom in certain circumstances claims for damages, arising from either tort or contract, should be made. While there is, in trespass, no question of estoppel, or of a plaintiff's reliance on any person's membership in the firm (Rowland v. Canuso, 329 Pa. 72, 79), there never has been any doubt of the liability of a signer of such a certificate for claims arising out of contracts with the firm.

The trial judge very properly sustained the objections to the proposed testimony. Accordingly, we enter the following

*Order*

Now, September 25, 1950, the motion of Roland Klisch for a new trial is denied.