## Kaufman's Estate (No. 1).

*Principal and agent—Letter of attorney—Limitations on powers of attorney—Commissions for negotiating loan.*

Where a letter of attorney by a mother to her sons gives general power over real and personal property but provides that,

"nothing herein contained shall give them or either of them power and authority to sell, convey, mortgage, pledge or otherwise encumber the said property," the sons cannot bind their mother by a contract to pay commissions to a broker for negotiating a mortgage loan on real estate. A general power at the end of the letter to act for the principal as largely as she could do if personally present, does not authorize such a contract.

Letters of attorney are to be strictly interpreted and their authority is never extended beyond that which is given in terms or that which is necessary and proper for carrying the authority into effect. A special power must be strictly pursued and whoever deals with an agent constituted for a special purpose deals at his peril when the agent passes the precise limits of his power.

*Contract — Commissions for procuring mortgage loan — Construction of contract.*

Where a contract to pay commissions to procure a mortgage loan which was to include an amount sufficient to pay off an existing mortgage, is conditional upon the consent of the mortgagee to accept payment of the existing loan, no recovery of commission can be had if such consent is not procured.

Argued April 27, 1917. Appeal, No. 76, April T., 1917, by Nellie S. Kaufman, from decree of O. C. Allegheny Co., April T., 1916, No. 8, sustaining exceptions to adjudication in Estate of Sibilla Kaufman, deceased. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Exceptions to adjudication.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in sustaining exceptions to adjudication.

*Thos. Patterson,* of *Patterson, Crawford, Miller & Arensberg,* with him *William Kaufman* and *Thomas F. Garrahan,* for appellant.—William Kaufman, the son and agent of the decedent, was without authority to make the alleged contract with the claimant: MacDon-

ald v. O'Neil, 21 Pa. Superior Ct. 364; Califf v. First Natl. Bank, Etc., 37 Pa. Superior Ct. 412; Campbell v. Foster Home Assn., 163 Pa. 609.

Even under the contract, as improperly testified to by the claimant and his witnesses, the claim should not have been allowed, since the alleged right to a commission was subject to the provisions of the application to the insurance company for a loan and it was impossible to comply with the provisions.

*E. B. Strassburger,* for appellee.—William Kaufman had full authority to make the contract in question: Ducan v. Hartman, 143 Pa. 595.

OPINION BY HENDERSON, J., July 13, 1917:

At the distribution of the balance in the hands of the administrator of Sibilla Kaufman, the appellee presented a claim for services in procuring a loan to be secured by a mortgage on real estate of the decedent. The property consisted of two lots in the City of Pittsburgh, on one of which there was a mortgage for $35,000, and on the other, a mortgage for $40,000. William Kaufman, a son and attorney in fact for the decedent had a negotiation with the claimant with reference to a loan to be obtained to take up the $40,000 mortgage which was then due. Eisner, the appellee, being unable to arrange for the loan brought in Trueblood and Rawlings to assist him. On consultation it was considered advisable to effect a loan for $75,000 and take up both of the mortgages, although the $35,000 mortgage would not become due until August, 1915. Rawlings represented a life insurance company to which the application was made in writing. Mrs. Kaufman did not sign the application and the evidence is she never knew that it had been made. It was incumbent on the claimant, therefore, to show authority in William Kaufman to enter into a contract which would bind her estate. This he undertook to do by oral evidence that the decedent had authorized

four of her sons to look after and manage her estate and that they had for several years acted in her behalf in that respect. It appears, however, that the authority given her sons was in writing in the form of a power of attorney and that the authority to which the witnesses referred in their oral evidence was the same as that created by the power of attorney. This document invested the appointees with power and authority: (a) to lease real estate, collect rents and give receipts therefor; (b) to collect and receive principal of and interest on investments and all other income arising from or out of the principal's property and to give receipts therefor; (c) to receive principal of and interest on mortgages and other debts of record and give receipts therefor and enter satisfaction thereof; (d) and after the payment of taxes, liens, cost of necessary repairs and all other necessary and proper charges and expenses both on real and personal property to pay over the balance remaining in their hands and to render an account from time to time of their receipts and expenditures. Following these powers the instrument contains the following restriction: "Provided however, that nothing herein contained shall give them or either of them the power and authority to sell, convey, mortgage, pledge or otherwise encumber the said property or any part thereof." From an examination of the evidence we conclude that the authority of William Kaufman to enter into the contract set up must be found in this written instrument. Specific duties are there committed to the attorneys and a specification of the acts to be performed. They are not invested with general authority to do as the principal could do but are limited to the matters set forth and they are particularly restrained from mortgaging or encumbering the real estate of their principal. That letters of attorney are to be strictly interpreted and that their authority is never extended beyond that which is given in terms or that which is necessary and proper for carrying the authority into effect is familiar law. A special power must be strictly

pursued and whoever deals with an agent constituted for a special purpose deals at his peril when the agent passes the precise limits of his power : Campbell v. Foster Home Assn., 163 Pa. 609; Wilson v. Wilson-Rogers, 181 Pa. 80; McDonald v. O'Neil, 21 Pa. Superior Ct. 364; 1 Daniel on Negotiable Instruments, Sec. 281. It is a reasonable construction that Mrs. Kaufman withheld from her agents the subject of mortgages on her property; that the business relating thereto was to be brought to her attention and was to be under her personal direction and supervision. Having no power to carry into effect a contract for a mortgage loan they were without authority to bind Mrs. Kaufman with respect to such loan without her consent or approval. In the light of the express authority granted to the agents it ought not to be assumed their capacity to negotiate for the creation of a new loan to take the place of a mortgage not due for about three years was implied. The contract was of no advantage to Mrs. Kaufman, it is not shown that she ratified the transaction and we are unable to view the case in a light which would support the authority of William Kaufman to make this charge against his mother's estate. It is said, however, that the general authority in the last clause of the instrument to act for the principal in the premises as largely and amply as she could do if personally present is sufficient to authorize the son to enter into such a contract. But these words are to be applied to transactions arising in the special business to which the instrument refers. Where an instrument enumerates special objects and acts to be performed such specification is to be regarded as a limitation on the general terms of the instrument. The principal determines for himself what authority he will invest in his agent and where this authority is specifically defined the power will not be enlarged by implication to cover transactions not within the specifications: Califf v. First National Bank, Etc., 37 Pa. Superior Ct. 412. We do not consider the general language of the power in question sufficient to

enlarge the particular business described in the instrument and to support the authority attributed to William Kaufman.

Another objection is made to the claim. The application for the loan contained the following provision: "It is understood that if the application is approved the loan is to be closed as soon as title papers are in shape to do so, provided we can arrange with mortgagee to accept payment of the $35,000 loan referred to in this application. If it can not be paid at this time the matter to remain in abeyance until February, 1913, the next interest paying date." This provision makes the loan contingent on the discharge of the $35,000 mortgage which was not due and payment of which was not accepted by the mortgagee. The right to compensation depended on the acceptance by the holder of the $35,000 mortgage of the amount due thereon in advance of the time when it was payable. The claimant acted on this understanding for it is manifest he understood that the $75,000 loan was not to take effect unless the $35,000 mortgage could be satisfied. A good title and a first lien were conditions precedent to the new loan and the negotiation must necessarily fail unless the holder of the $35,000 mortgage could be induced to satisfy it and this was not done. It is said, however, that the provision that if that mortgage could not be paid at the time the matter was to remain in abeyance until February, 1913, implies that the mortgage would be discharged at that time, but we do not so construe it. It rather means that the whole negotiation would be suspended until that date, possibly in the belief that the mortgagor had the right to pay the debt at that time, but that is not shown to be the case and the clause is not a qualification of the previous proviso that the transaction was only to be closed if the $35,000 mortgage could be got out of the way. This is an obstruction in the claimant's path which has not been removed by any of the proofs in the case.

Objection was made to the competency of the plaintiff

as a witness but in view of the conclusion already reached a consideration of that question is unimportant. On a consideration of the whole evidence and the law applicable thereto our opinion is that the court erred in sustaining the plaintiff's claim.

The decree is reversed and the record remitted to the court below with direction to make distribution in accordance with this opinion.