## Armen v. Frederick

*A. G. Helbling*, for petitioner.
*Milton Selkovits*, for respondent.

SOHN, J., February 15, 1947.—John J. Frederick executed and delivered to his wife, Florence Frederick, a letter of attorney, dated June 15, 1942. He was inducted in the armed forces of the United States June

22, 1942. The letter of attorney was entered of record in the office of the Recorder of Deeds of Beaver County, November 6, 1942. In the letter of attorney he empowered his wife "to do and perform all matters and things, transact all business, make, execute and acknowledge all contracts, orders, deeds, writings, assurances and instruments which may be requisite or proper to effectuate any matter or thing appertaining or belonging to me, and especially granting to her the power to apply for and renew my restaurant liquor license no. R 16644 and in my name and stead execute the necessary liquor bond, with the same powers and to all intents and purposes with the same validity as I could, if personally present; hereby ratifying and confirming whatsoever my said attorney shall or may do by virtue hereof, these presents to be in effect for the duration of my stay in military service."

A judgment was entered by confession against John J. Frederick, defendant, by R. C. Armen, plaintiff. This judgment is entered by virtue of the authority of a warrant of attorney to confess judgment in a note, dated November 20, 1944, payable three months after date. The signature on the note is "John J. Frederick, by Florence J. Frederick, Atty. in Fact." The following appears on the statement and confession:

"See Power of Attorney Book, in the Recorder's Office of Beaver County, Pa. Vol. 28, page 168—power of attorney from John J. Frederick to Florence Frederick, also known as Florence J. Frederick."

On petition of John J. Frederick, a rule issued to show cause why the judgment should not be opened and defendant permitted to defend. An answer was filed to this rule. On petition of John J. Frederick, a rule subsequently issued to show cause why the judgment should not be stricken from the record. Plaintiff filed an answer to this rule. The rule to strike off the judgment is now before the court, and counsel do not, at this time, press the rule to open the judgment.

It is alleged in the petition to strike off that the letter of attorney does not authorize and empower Florence J. Frederick to borrow money, and there is no authority in the power of attorney for the confession of judgment; that there is no authority in Florence J. Frederick to execute notes; that Florence J. Frederick was not authorized to delegate a power of attorney to any person to confess judgment; that there is no authority in Florence J. Frederick to waive exemption and condemnation.

Confession of judgment is the voluntary submission to the jurisdiction of the court giving by consent, and without the service of process, what could otherwise only be obtained by summons and complaint and through formal proceedings. A person who confesses a judgment submits to be sued in that form and manner. The confession of a judgment is but one of the ways and processes, one manner, by which a person is sued: First National Bank of Canandaigua v. Garlinghouse, 53 Barbour 615, 619 (N. Y.).

A motion to set aside or strike off a judgment must be based on the ground of irregularity appearing on the face of the record. A motion to open it is an appeal to the equitable power of the court to let defendant into a defense. No court has power to strike off a judgment regular on its face: Williams v. Notopolos, 247 Pa. 554.

The duty of the prothonotary in entering a judgment by confession on a warrant of attorney is to enter the same against the person or persons who executed the same, but this does not restrict him to the name or names appearing in full on the face of the warrant. The prothonotary in entering the judgment may inquire who are the persons who executed the warrant in the sense, who are the legal makers of the instrument liable thereon, even though they did not put their own hands to it and their names do not appear on its face: Miller v. Glass Works et al. (Wagner's Appeal),

172 Pa. 70. The authority to enter is not limited to the parties who placed their signatures on the instruments. The prothonotary may look beyond the instrument itself and enter judgment against the person or persons who executed the same. This does not mean signatories alone; it includes partners and principals whose agents have signed for them, and judgment entered against a principal, whose agent has signed for him, is on its face regular. It is not void but voidable: Jamestown Banking Company v. Conneaut Lake Dock and Dredge Company et al., 339 Pa. 26.

In Harr, Secretary of Banking, et al. v. Bernheimer et al., 322 Pa. 412, Mr. Justice Barnes said (p. 416) :

"The Act of February 24, 1806, P. L. 334, makes it the duty of the prothonotary 'to enter judgment against the person or persons who executed' the note, bond, or other written instrument. Where a person appoints an agent to execute a note for him, the act of the agent in signing the instrument is considered in law the act of the principal, and has the same effect as if the principal himself had signed it. Therefore, it is the prothonotary's duty under the act mentioned to enter judgment against the persons who appear to have executed the note, whether the signatures are in person or by agent. See Miller v. Royal Flint Glass Works, 172 Pa. 70. Whether signature of the maker is valid, or whether the agent had authority are matters which cannot be determined from an inspection of the instrument. Relief with respect to such defects in the instrument can be obtained only through the medium of a motion to open the judgment.

"The usual practice in cases where the validity of a judgment by confession is challenged on the ground of forgery has been to file a petition to open it, and this is obviously proper. See Mielcuszny v. Rosol, 317 Pa. 91; Austen v. Marzolf, 294 Pa. 226; Levy v. Gilligan, 244 Pa. 272; Kaier Co. v. O'Brien, 202 Pa. 153. The

same procedure applies where the instrument is executed by an agent, and his authority is attacked. In both cases the introduction of evidence dehors the instrument is essential to a determination of the question raised."

In Ulick v. Vibration Specialty Company, 348 Pa. 241, Mr. Justice Barnes said (p. 244):

"It is fundamental that an authority to confess judgment cannot operate in favor of a stranger to the contract. See Dime Bank & Trust Co. vs. Manganiello, 152 Pa. Superior Ct. 270, 273; Boggs v. Levin, 297 Pa. 131, 134; 6 Standard Pennsylvania Practice, p. 682. This rule, however, has no application to the instant case. Appellee is no stranger to the contract. She is, in fact, the party to the contract. . . . Where the record establishes that the one in whose favor judgment has been confessed is the real party for whom the power to confess judgment was intended the judgment is properly of record. Where, however, this is not disclosed by the record, by affidavit, averment or otherwise, the result is otherwise."

It is therefore apparent that there was authority for the entry of the judgment in the manner in which the judgment in this case was entered. However, we must consider whether the letter of attorney in this case is a part of the record so that we may determine the power of the agent from an inspection of the record.

In Union Trust Company v. Means, 201 Pa. 374, the court said (p. 377):

"The power conferred in this case was in writing, and recorded in the recorder's office in this county. It was the duty of the defendant lodge to be informed as to its terms, especially when the agent with whom they were dealing was its financial representative, as well as the attorney in fact for Mrs. Montgomery, as against the defendants, we see no reason why the letter of attorney should not be strictly construed."

In Ulick v. Vibration Specialty Company, supra, it is said:

". . . that appellee had registered under the Assumed or Fictitious Names Act prior to the execution of the said contract. The registration being on record was constructive notice to appellant of the nature of the person or business with whom it was negotiating and with whom it contracted: Houser v. Childs, 129 Pa. Superior Ct. 565, 568; Estate of Edwin R. Mack, 111 Pa. Superior Ct. 20, 23. Appellant cannot plead ignorance of facts of which it is deemed to have had notice. Nor does it appear that appellant was deceived in any manner or that any fraud was perpetrated upon it. See Rome S. & S. Station v. Finch, 111 Pa. Superior Ct. 226, 228."

We are of the opinion that plaintiff in this case made the letter of attorney a part of the record by placing on the statement and confession a notation "See the Power of Attorney recorded, etc." We are of the opinion that the letter of attorney is a part of the record and as such we must construe it in concluding whether the judgment should be stricken from the record. Defendant in the judgment contends there was no authority in the power of attorney authorizing the attorney in fact to borrow money. We do not pass upon this question because in our view of the case it is immaterial whether the attorney in fact had such power or not.

Defendant contends that his attorney in fact had no power to execute notes, or to authorize the confession of judgment, nor had she power to waive exemption or agree to condemnation. If we were to dismiss the rule to strike off and make absolute the rule to open the judgment, the construction of the power of attorney would be for the court. It would become necessary for the court to determine what powers were granted under the power of attorney. We must determine in this proceeding whether the letter of attorney authorized

the attorney in fact to execute a warrant of attorney to confess judgment.

In Califf v. First National Bank, 37 Pa. Superior Ct. 412, we find a statement of the general rule as to construction of a power of attorney (p. 419) :

"Letters of Attorney are strictly interpreted and the authority is never extended beyond that which is given in terms, or that which is necessary and proper for carrying the authority so given into full effect: Campbell v. Foster Home Association, 163 Pa. 609; Wilson v. Wilson-Rogers, 181 Pa. 80; Union Trust Co. v. Means, 201 Pa. 374; MacDonald v. O'Neil, 21 Pa. Superior Ct. 364. 'If authority be vested in the agent in very general terms, but the instrument enumerates certain special objects and acts this specification will be regarded as a limitation upon the general words; and the authority will be confined to action within the scope of the enumerated objects, unless there be some phraseology in the instrument, or some peculiar circumstances, which impress a different purpose upon the instrument': 1 Daniel on Negotiable Instruments, p. 233, sec. 281. It was held, in Rossiter v. Rossiter, 8 Wendell, 494, that a power of attorney to collect debts, to execute deeds of land, to accomplish a complete adjustment of all concerns of the principal in a particular place, and to do all other acts which the principal could do in person, conferred no authority on the agent to sign a note in his principal's name, the general words being limited by the matters specially mentioned. When the agent was authorized to manage certain real estate with the general words extending his power to all property of the principal of every description, and authorizing him 'to do all lawful acts concerning all the principal's business and, affairs of whatever nature or kind soever,' it was held that the agent could not indorse bills in his principal's name: Esdaile v. LaNauze, 1 Younge & Col. 394. The power

of attorney in the present case was offered by the defendant for the purpose of showing that M. C. Decker had authority to indorse the check in question, as attorney in fact for Matilda Brown. The manifest intention of the entire instrument was to vest in M. C. Decker authority to lease and manage the farm of Matilda Brown and the general words above quoted, in the concluding part of the document, must be limited to transactions growing out of the special business to which the instrument refers. The meaning of the letter of attorney was a question for the court, and, standing alone, it was not sufficient for the purpose for which it was offered in evidence. All the assignments of error are dismissed."

That the letters of attorney are to be strictly interpreted and that their authority is never extended beyond that which is given in terms or that which is necessary and proper for carrying the authority into effect is familiar law. A special power must be strictly pursued and whoever deals with an agent constituted for a special purpose deals at his peril when the agent passes the precise limits of his power: Campbell v. Foster Home Assn., 163 Pa. 609; Wilson v. Wilson-Rogers, 181 Pa. 80; McDonald v. O'Neil, 21 Pa. Superior Ct. 364; 1 Daniel on Negotiable Instruments, §281. The principal determines for himself what authority he will invest in his agent and where this authority is specifically defined, the power will not be enlarged by implication to cover transactions not within the specifications: Califf v. First National Bank, 37 Pa. Superior Ct. 412; see Varner v. South Penn Oil Co., 64 Pa. Superior Ct. 544; Kaufman's Estate, 67 Pa. Superior Ct. 456; Gross v. Kincaid, 83 Pa. Superior Ct. 514.

The authority conferred upon the attorney in fact in this case was a general authority to manage and conduct the business and to apply for a renewal of a liquor license. There is no authority therein conferring

power upon the attorney in fact to execute a warrant of attorney to confess judgment.

It is to be further observed that if there was authority to sign a note there is no authority to confess judgment or to waive the benefit of the exemption and condemnation laws, unless it be so understood by the parties: Payne v. Robinson, 1 Dist. R. 638.

In the case of Rigg v. Burgauer, 5 Montg. 69, President Judge Swartz said (p. 70):

"As attorney in fact he could not bind his father by this purchase. He was not authorized to engage in the retail cigar business as the representative of his father. The purchase was made without the consent or knowledge of the father.

"But if we are in error as to this, it is clear that under the power of attorney he had no authority to confess judgment against his father. He could only do the things that belong and pertain to the cigar manufacturing business, or that may be necessary to the business conducted in the usual and ordinary manner, and this does not include the confession of judgment against his principal: Wharton on Agency, Sec. 129; Story on Agency, Sec. 63a; Howell v. Gordon, 40 Ga., 320; Dispatch Co. vs. Bellamy Co., 37 American Decisions, 211."

In 2 C. J. S. 1339, §117, it is said:

"An agent may confess or agree to confess judgment when such power is expressly bestowed, but only in so far as it accords with the stated limits of his power; and no such authority will be implied from the grant of other specific powers whose effectuation does not necessarily involve its exercise.

"A mandate may be conferred upon an agent to confess judgment in behalf of his principal and, where that is done, the latter is bound as if he personally had confessed such judgment as to any obligation which comes within the class within which the agent is empowered so to act. Moreover, stipulations or under-

takings for the confession of judgment may be executed by an agent if expressed in or by some instrument of a character customarily employed in this connection and which the agent has general authority to execute. The power will not be implied from the grant of other specific powers which do not require for their carrying out that the agent shall have power to bind his principal by confession of judgment, even though authorizing acts or transactions in connection with which obligors are frequently accustomed to take such action, as, for instance, from the power to mortgage or to effect and execute releases, compromises, settlements, conveyances, and receipts, or to sell property. Moreover, where such a mandate is expressly conferred, the authority must be strictly pursued and exercised within such limits as the principal has imposed."

In the case of Union Trust Company v. Means, supra, it is said (p. 377):

"Letters of attorney are ordinarily subjected to a strict interpretation, and the authority given is never extended beyond their terms; thus, as a general rule, the power to sell real estate does not confer a power to mortgage, and a power to sell, assign and transfer stocks will not include a power to pledge them for the agent's debt; *nor is a power to assign a promissory note an authority to confess judgment against his principal,* and a power to sell land 'for such sum or price and on such terms as to him shall seem meet,' does not authorize him to receive payment otherwise than in money. The agent must adhere strictly to his instructions; he is bound to obey the instructions of his principal to the letter, and they cannot be enlarged or extended in any particular without the consent of the principal. . . . It confers upon McCrickart power to sell and assign mortgages owned and possessed by plaintiff at the time of its execution, but not mortgages acquired after its execution. . . . In view of the fore-

going conclusions, we find that the assignments to defendants by McCrickart of the five mortgages set forth in the bill were without authority, and, therefore, void." (Italics supplied.)

Section 76 of A. L. I. Restatement of Agency is:

"Unless otherwise agreed, an agent is not authorized to execute or endorse negotiable paper unless such execution or endorsement is usually incident to the performance of the acts which he is authorized to perform for the principal."

Plaintiff's answer to the rule avers that the authority to delegate the power to confess judgment is contained in the letter of attorney. An examination of the instrument and the law applicable thereto discloses no such authority. Testimony would not be admissible to explain or enlarge the power. The claim of exemption and the right of condemnation are vested legal rights which defendant can waive only by affirmative action. Permission to another to authorize confession of judgment must be expressed in unequivocal language. No mention is made of any such authority in the letter of attorney. Defendant was in the military service when the note was executed, and, under the Soldiers' and Sailors' Civil Relief Act no judgment could have been entered against him as a result of adverse action by plaintiff. If defendant be held to have waived these privileges while in the military service, it must be by specific action on his part. We find no such authority in the letter of attorney. Such power cannot be implied from the grant of other specific powers. The powers granted do not require in their execution the authority to authorize confession of judgment against the principal. There is no authority in the power of attorney to empower the attorney in fact to execute a warrant of attorney to confess judgment against the principal. The judgment so entered must be stricken from the record.

*Order*

And now, to wit, February 15, 1947, the judgment entered by R. C. Armen against John J. Frederick, at no. 162, June term, 1946, D. S. B., is stricken from the record. Costs to be paid by plaintiff.